IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,648

STATE OF KANSAS,
*Appellee*,

v.

JAMES A. QUALLS III,
*Appellant*.

SYLLABUS BY THE COURT

1.

A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Once the defendant satisfies the burden of producing such evidence, the State has the burden of disproving the defense beyond a reasonable doubt.

2.

A defendant may meet his or her burden of showing that a reasonable person in his or her circumstances would have perceived the use of deadly force as necessary for self-defense, even if the only evidence supporting the defendant's theory consists of the defendant's own testimony, which may be contradicted by all other witnesses and by physical evidence.

3.

Error in refusing to give a requested self-defense instruction is subject to harmless error analysis.

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed April 19, 2019. Reversed and remanded.

*Kasper C. Schirer*, of Kansas Appellate Defender Office, argued the cause, and *Carol Longenecker Schmidt*, of the same office, was on the brief for appellant.

*Rachel L. Pickering*, assistant solicitor general, argued the cause, and *Michael F. Kagay,* district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.:  In 2008, James Qualls shot a man to death following a dispute over a pool game. He was convicted of premeditated first-degree murder. This court reversed the conviction for failure to give lesser included offenses instructions. *State v. Qualls*, 297 Kan. 61, 298 P.3d 311 (2013). On retrial in 2014, a jury again found him guilty of premeditated first-degree murder. He takes this direct appeal.

FACTS

At the second trial, evidence of the following facts was introduced to the jury.

On the evening of July 16, 2008, Qualls and his wife, whom he had married five days earlier, and their children attended the Mexican Fiesta in Topeka. Qualls drank some beer there, and then the family returned to their house, where he drank some more. Qualls, his wife, and his sister then decided to go to a bar and, shortly after midnight, ended up at the Whiplash bar. Qualls was carrying a recently purchased 9 millimeter semi-automatic pistol in his pocket.

A dispute broke out over a pool game, when Qualls made a joking comment to Amber Martindale that she had made a lucky shot. As the dispute escalated, Qualls' wife bet Martindale $1000 that she could beat her in a fight. Qualls attempted to get between the women, and his wife went to the door and encouraged Martindale to come outside to

2

fight. Martindale's fiancè, Joseph Beier, shouted at Qualls, telling him he had to get his "bitch" under control. The situation deteriorated, as Qualls' wife started yelling in Beier's face, and Beier hit Qualls in the face. Qualls grabbed hold of Beier and pushed him back against a wall.

The bartender, Cliff Cormier, attempted to break up the fight. From behind he grabbed Qualls around the neck and pulled him away from Beier. Beier hit him again, and then another bar patron, Mitchell McDonald, grabbed Beier and moved him against a wall.

What happened next is subject to some dispute. Qualls went to the ground as a result of Cormier's chokehold grip, and McDonald may have released Beier from his grip. Qualls got up and started to walk toward the door. Qualls testified that Beier's arms were free and he reached into his pants as if reaching for a gun. McDonald testified that he had a firm grip on Beier. In either event, Qualls pulled his pistol from his pocket and fired its contents, some 12 bullets, into Beier. Beier died from his wounds.

Multiple security cameras recorded the activities in the bar, and the recordings were introduced at trial. Unfortunately, the video recordings, although taken from different angles, are too choppy and indistinct to allow a clear understanding of what happened, and they neither confirm nor disprove Qualls' version of the events that prompted him to draw his gun and open fire.

Qualls and his wife then left the bar and drove off while someone fired shots at them, shooting out a car window and a tire as they left. Qualls dropped the gun somewhere in Topeka and later drove to Kansas City. He turned himself in to police a couple of weeks later. Following his conviction in the second trial, he took a direct appeal to this court, raising numerous claims of error. We address only his argument that the district court should have granted his request for a self-defense instruction.

3

ANALYSIS

Qualls requested an instruction on self-defense and an instruction on voluntary intoxication. The district court denied the requests, stating that the evidence did not support those defenses.

> "[F]or instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.*] *Ward* [, 292 Kan. 541, 565, 256 P.3d 801 (2011)]." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

In *Qualls I*, the majority held that it was error not to give a voluntary manslaughter instruction under an imperfect self-defense theory. 297 Kan. at 72. This court held that Qualls' subjective claim that Beier was coming towards him and Qualls' testimony that he saw Beier reach for an object at his waist or believed Beier had a gun all sufficed to provide evidentiary support for the imperfect self-defense theory. 297 Kan. at 70-71. The court declined, however, to rule on Qualls' argument that he was entitled to an instruction on self-defense "because the evidence on retrial might change the analysis as to whether a self-defense instruction is appropriate." 297 Kan. at 73.

On retrial, the district court rejected Qualls' request for a self-defense instruction. The court explained that the evidence did not support such an instruction:

> "I've heard no testimony that Mr. Qualls at any time prior to or up to this point believed or had seen any weapon in the bar. There is no indication that he was aware or that there

4

was any weapons in that bar, from any testimony that came out. I mean we heard testimony from one person who said that later on someone came out of the bar later, but no indication that Mr. Qualls was aware of that, and I'm not even sure if there was weapons in the bar, but I'm trying to start with reasonable belief by the defendant. And there was no indication at the time that the shooting began that there were any weapons in the bar other than a pool cue perhaps.

. . . .

"So defendant is permitted to use physical force against another person when, to the extent it appears and reasonably believes that physical force is necessary to defend himself against another person's imminent use of unlawful force. Reasonable belief requires both belief by the defendant and existence of facts that would persuade a reasonable—I just don't think that there's, it is, that you have facts that, that would suggest that Mr. Beiers [*sic*], if he was reaching, that it is reasonable to believe that you should, that the amount of force that was used by Mr. Qualls was reasonable. I don't believe his, you know, this, I don't believe there is an existence of facts that would persuade a reasonable person to that belief, and that belief meaning Mr. Qualls was, had no option but to fire nine to, the number of times he fired."

The prosecution argued:

"[T]o qualify for an instruction in self-defense there must be some evidence presented the defendant reasonably believed. They've covered that the defendant believed this was necessary. He saw the victim's hand move. So he shot him nine to 12 times in the back. That's covered. He believed that. Whether it's reasonable, that's an objective analysis that a reasonable person would believe, and there is no evidence in front of the Court that Joseph Beier had any type of weapon, made any type of aggressive moves towards this defendant. This defendant's own testimony was he saw his hand move towards his waist.

. . . .

5

"Joseph Beier could have been straightening his shirt because he just got picked up by a 400-pound guy and thrown against a wall, and this defendant believes that's reasonable to shoot him nine to 12 times in the back. There's no evidence of reasonableness of an objective standard, any evidence to put this theory to the jury."

Qualls' attorney responded:

"Well, here there is evidence, and it came from Mr. Qualls, he saw him reaching for something he believed it to be a weapon."

The district court rejected Qualls' argument and stayed with its original ruling.

It is undisputed that the issue of a self-defense instruction was preserved; Qualls requested the instruction and argued at length for it. The instruction would have been legally appropriate under K.S.A. 2017 Supp. 21-5222. See *State v. Knox*, 301 Kan. 671, 677-78, 347 P.3d 656 (2015); *State v. Salary*, 301 Kan. 586, 592-93, 343 P.3d 1165 (2015) (self-defense jury instruction can be legally appropriate for charge of first-degree murder). The next analytic question is whether the instruction was factually appropriate.

The elements to establish the right to use deadly force in self-defense are codified at K.S.A. 2017 Supp. 21-5222:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.
"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

6

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

Under this statute, deadly force can be justified only to the extent a person reasonably believes deadly force is necessary to prevent imminent death or great bodily harm. *Knox*, 301 Kan. at 678. This court has recognized that the self-defense statute sets out a two-part test:

"The first is subjective and requires a showing that [the defendant] sincerely and honestly believed it was necessary to kill to defend herself or others. The second prong is an objective standard and requires a showing that a reasonable person in [the defendant's] circumstances would have perceived the use of deadly force in self-defense as necessary. [Citation omitted.]" *State v. McCullough*, 293 Kan. 970, 975, 270 P.3d 1142 (2012).

In *State v. Haygood*, 308 Kan. 1387, 1405-06, 430 P.3d 11 (2018), this court cautioned against confusing the subjective and objective requirements. Even if the only evidence supporting the defendant's theory consists of the defendant's own testimony, which may be contradicted by all other witnesses and by physical evidence, the defendant may have met his or her burden of showing that a reasonable person in his or her circumstances would have perceived the use of deadly force as necessary self-defense.

*Haygood* clarified both the requirements that a defendant must meet in order to receive a self-defense instruction and the kind of evidence that suffices to meet those requirements. In the present case, the district court did not have the benefit of the *Haygood* opinion, which was published in November 2018, to guide it in ruling on the instructional issues. Under *Haygood*, if Qualls' testimony was competent evidence that recited circumstances that could allow a reasonable juror to conclude that he was entitled to defend with deadly force, then he was entitled to a self-defense instruction.

7

K.S.A. 2017 Supp. 21-5108(c) requires a requested instruction on every affirmative defense that is supported by competent evidence:

> "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies. Once the defendant satisfies the burden of producing such evidence, the state has the burden of disproving the defense beyond a reasonable doubt."

Self-defense is such an affirmative defense. *State v. Staten*, 304 Kan. 957, 965, 377 P.3d 427 (2016).

The district court held that the evidence did not support the objective prong:

> "The Court is going to deny offering the self-defense instruction to the jury, . . . [*State v. Gonzales*, 282 Kan. 73, 145 P.3d 18 (2006)] concluded that in that case fulfilling the objective prong requires more than the defendant's stated belief and requires evaluation of the evidence in light of the totality of the circumstances. In light of the totality of the circumstances the Court does not find that the objective prong of a reasonable belief has been met in this case. For those reasons the Court is going to deny use of that instruction."

Although the district court discounted the likelihood that a reasonable juror could have decided that Qualls was justified in using deadly force, Qualls' testimony, if believed, describes a scene in which he may well have justifiably felt threatened with imminent death or great bodily harm.

Qualls stated that after the confrontation began between Qualls' wife and Beier, Beier yelled at Qualls to get "his bitch" under control. The situation deteriorated into a physical fight. Beier hit Qualls. Qualls grabbed Beier, held his arms down, and pushed him back against a wall. Qualls expected other people to come to his help, but, instead,

the bartender grabbed Qualls around the neck, causing him to fall backwards, and Beier punched Qualls again. Qualls got "choked out," fell to the floor, and "blacked out." Qualls came to, stood up, and was disoriented. Beier was shouting that Qualls should be getting his "bitch" out of there right now while he still could, before something else happened to him. Beier told him "to get the fuck out of here." Qualls took a couple of steps toward the door and tried to get his wife to leave with him. He then saw Beier "reaching for his waist as in a gesture like he had a gun." It was then that Qualls pulled his gun from his pocket and began firing, walking over to Beier and emptying all the bullets it contained. He was not sure whether he had even hit Beier, and, when shots were fired at him when he left the bar, he thought it was probably Beier shooting at him.

Answering his counsel's question why he shot Beier, Qualls testified:

"Protect my life and the life of the people that was with me. I thought that he was going to do something more to me. He never give me no reason to believe that he wasn't going to harm me at the present time. Everything that he did that night showed that he was being aggressive towards me. I did nothing wrong to that man."

On cross-examination, the prosecution asked Qualls whether he was trying to kill Beier that night, and Qualls said: "I was just trying to stop him. . . . From killing me, from shooting me or hurting me or whatever. I mean, I don't know what he was planning on doing. But I didn't want to find out either."

This testimony describes a situation in which actions taken in self-defense could be justified: Beier hit Qualls twice; Qualls had been taken down in a choke-hold by someone else; Beier was shouting expletives at Qualls and was warning him to get out or something bad could happen; and Qualls saw Beier reach into his pants in a gesture suggesting he was reaching for a gun. Qualls found himself in a chaotic, threatening situation. Similar testimony in the first trial led this court to hold that the record, when

9

viewed in the light most favorable to Qualls, was sufficient to let the jury "decide if Qualls had an unreasonable but honest belief that the use of deadly force was necessary to protect against Beier's alleged imminent use of unlawful force." 297 Kan. at 71.

The question in the present issue is whether the jury should have been allowed to consider whether he had a *reasonable* belief that deadly force was necessary. If Qualls reasonably believed Beier was threatening his life, self-defense would have been appropriate; if Qualls was responding to some other cue, then self-defense would not have been a legitimate defense.

Qualls' testimony sufficed to make the self-defense instruction factually appropriate. *Haygood* informs us, however, that the refusal to give the instruction is subject to harmless-error analysis. 308 Kan. at 1407.

To be sure, witnesses, including Qualls himself, agreed that Beier did not actually have a gun. Other witnesses did not see Beier reach into his pants. And Qualls fired 12 shots into Beier, which might appear to be more than he needed to protect himself. But we find that the refusal to give the requested instruction was error and that the error was not harmless. Even though Beier had no firearm, a reasonable person, under the described circumstances, might have believed a gun was soon coming into play. Although other witnesses did not see Beier reach into his pants, they were focused more on what Qualls was doing and whether he was leaving the bar. The surveillance video is much too choppy to confirm or repudiate Qualls' testimony, but it seems to support his contention that he was starting to move toward the exit just before he fired the shots. And there is no rule requiring those that are defending themselves against the reasonably perceived threat of imminent harm to cease that defense and stop to investigate whether they are still in danger.

CONCLUSION

We conclude that denying the requested self-defense instruction was error and the error was not harmless. It is therefore unnecessary for us to address the other issues that Qualls raised in his briefing to this court. We reverse and remand the case to the district court.

BEIER, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 115,648 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.