IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,419

STATE OF KANSAS,
*Appellee*,

v.

DION JAMAL GREEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

When deciding whether to impose consecutive or concurrent sentences, the sentencing court may consider statements made by the defendant in earlier proceedings as well as at the time of sentencing.

2.

One purpose of the contemporaneous objection rule is to give the district court the opportunity to make a ruling at the time that testimony is being introduced in light of the circumstances surrounding the presentation of that testimony.

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed March 11, 2022. Affirmed.

*Debra J. Wilson,* of Capital Appeals and Conflicts Office, argued the cause, and *Reid T. Nelson*, of the same office, was with her on the brief for appellant.

*Kurtis K. Wiard*, assistant solicitor general, argued the cause, and *Michael J. Duenes,* assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Dion Jamal Green appeals from the consecutive hard 25 sentences imposed consequent to his plea of guilty to two counts of felony first-degree murder. The facts leading to his sentence were stated at his plea hearing.

On December 25, 2018—Christmas Day—police were dispatched to an address in Junction City, where they found the body of Jenna Schafer, who had been shot in the head. Witnesses identified Green as the last person seen with Schafer at a party the previous night. Green initially denied responsibility for her death but later admitted he left the party with her with the intention of killing her; shortly thereafter, he shot her dead. He told police he did this because a certain Mashaun Baker, also known as "Sleaze," promised to pay him $1,000 to carry out the execution. An autopsy revealed that Schafer was four to eight weeks pregnant at the time of her death.

On January 7, 2019, the State charged Green with one count of premeditated capital murder "done pursuant to a contract or agreement" of Jenna Schafer and one count of premeditated capital murder, as set out in K.S.A. 2020 Supp. 21-5401 and K.S.A. 2020 Supp. 21-5419. On August 7, 2019, the State filed an amended complaint, charging Green with two counts of premeditated murder. Then, on June 4, 2020, the State filed a second amended complaint, charging Green with two counts of felony first-degree murder, with kidnapping as the underlying felony.

Green requested that he be allowed to plead guilty to the charges set out in the second amended complaint. Both the State and Green agreed to request presumptive hard 25 life sentences. The agreement left open for argument whether the sentences would run consecutive or concurrent. The plea agreement was eventually accepted by the district court judge.

On October 15, 2020, Green filed a motion to continue the sentencing hearing so that his mother could appear in person to speak on his behalf. In a written response, the State objected to the motion, arguing that sentencing had already been postponed at Green's personal request so that he could remain longer in Geary County near his family, and at his counsel's request, based on an unusually heavy capital homicide caseload. The State expressed its openness to remote electronic appearance by Green's mother. The court formally denied the motion from the bench during the sentencing proceedings, and Green's mother addressed the court virtually via Zoom. The court then imposed consecutive hard 25 sentences.

Green raises two issues to this court, both challenging the validity of the sentencing proceeding.

Green first argues on appeal that the district court abused its discretion when it imposed consecutive hard 25 life sentences because its decision was based on an error of fact. He contends substantial competent evidence did not support the factual determination that he committed the crimes in the hope of receiving financial compensation.

Deciding whether to impose concurrent or consecutive sentences generally lies within the trial court's discretion. *State v. Frecks*, 294 Kan. 738, 741, 280 P.3d 217 (2012). A court abuses its discretion if its action:

> "(1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

At sentencing, in countering Green's expressions of remorse, the prosecutor told the court: "There was no concern that he had murdered this girl in exchange for a thousand dollars, that he knew she had two children whom he left orphaned." Immediately before it imposed the sentence, the district court judge explained why he was imposing consecutive sentences instead of concurrent ones:

> "Mr. Green, you know, I can look—I—I can look you right in the eye and say any—anybody that—that thinks a human life is worth a thousand dollars, and is willing to take that for someone to shoot somebody in the head does not deserve compassion from the Court. That's the Court's feeling in this case. And I don't—I'll—I'll try to make this short and as painless as possible. But simply does not deserve it, hasn't earned it.
>
> . . . .
>
> ". . . There is no worse thing that—that—murder for hire is heartless, for lack of a better word. And you say you have a heart. And I know you have—you have a drug problem, or you did. And probably always will be. You're an addict, and you always will be an addict. And if you were out of prison, I don't know that you wouldn't go back and start using again, and you will have the same I-don't-care attitude that you have told me here today that you had when this shooting occurred."

4

This was not a speculative, unsupported assertion.

During an initial interrogation, Green told police:

"Someone paid me, was going to pay me. Because they wanted her out of the way. I fucked up, man. All I care about was my girl. You know what I'm saying, we living paycheck-to-paycheck. You understand what I'm saying. That's why I did it. . . . I wanted her Christmas to be good. That's all I cared about, I was supposed to get paid today.

"Q: How much were you supposed to get paid?

"A: A thousand dollars."

During a break in the interrogation, Green was permitted to make a telephone call to his wife. That call was recorded, and it showed Green told his wife the crime was financially motivated:

"I took the opportunity regardless of who it was, the worst mistake of my life. All I'm saying was the outcome. And that's why I stayed up all night hoping to get paid.

. . . .

"[Y]ou would have had a good Christmas the way you wanted to do whatever you wanted to do, go out wherever you wanted to go or whatever the case may be. That was my whole thing and that was my whole logic and I didn't give a fuck what I had to do to make that happen for you."

At the hearing on the plea agreement, Green told the judge—who was also the sentencing judge—that he killed Schafer "because I was paid to do it." The prosecutor summarized the evidence that would be produced at trial, which included Green's statement to police on interrogation "that he did this because he was paid by somebody

5

named Mashaun Baker, also known as Sleaze, to commit the murder in exchange of $1,000." Green did not object to or disagree with this factual basis for his guilty plea.

At the plea hearing, the judge stated he was taking judicial notice of Green's interviews and the transcripts of the preliminary hearing. He also took notice of that evidence at the sentencing hearing. These materials clearly supported the premise that the primary motivation for his crime was Green's hope to obtain financial compensation so that he could provide a "good Christmas" for his family.

Green asserts that the State did not believe its own contract-killing theory, in part because it dropped its original capital murder charges and in part because it did not pursue charges against the supposed instigator of the murders. This is of no consequence. A defendant's statements, standing alone, may suffice to support factual conclusions consistent with those statements. See, e.g., *State v. Qualls*, 309 Kan. 553, 560, 439 P.3d 301 (2019); *State v. Qualls*, 297 Kan. 61, 70, 298 P.3d 311 (2013) *State v. Tahah*, 293 Kan. 267, 273, 262 P.3d 1045 (2011). Green repeatedly insisted he committed the crime in exchange for a promise of money, and, whatever action the State took with respect to amending the criminal complaint or to charging other possible defendants, the district court did not abuse its discretion in believing Green's claim.

Based on what the prosecutor argued at sentencing, what Green told the judge at the plea hearing, and what Green said at the interrogation and during the phone call to his wife, the district court judge had an ample factual basis for its statement at sentencing that Green committed the murder "for hire" and in exchange for a promise of $1,000.

6

Green next argues that he was denied constitutional due process because the district court refused to continue the sentencing hearing so that his mother could testify in person on his behalf.

K.S.A. 22-3401 allows a district court to grant a continuance of trial proceedings for "good cause." A court's refusal to grant such a continuance is reviewed on appeal for an abuse of discretion. *State v. Carter*, 284 Kan. 312, 318, 160 P.3d 457 (2007).

Green requested a continuance because his mother wanted to address the court at sentencing but did not want to travel from Maryland during the COVID pandemic. Green's motion for continuance, filed approximately two weeks before sentencing, explicitly allowed for a remote video appearance by his mother. In relevant part, the motion stated:

> "Dion Green, by and through counsel and pursuant to K.S.A. 60-240, moves this court to find good cause and continue the sentencing set for October 28, 2020. Further, if the court does not find good cause, *to alternatively arrange for remote viewing and a remote video statement*, on behalf of Mr. Green, by Mr. Green's non-biological mother, Dr. Lynne Holland.
> . . . .
> "Alternatively, if the Court believes that good cause is not met to continue the sentencing, or believes we will not have more certainty with the COVID-19 pandemic in December, *Mr. Green and his counsel would request that a system is set up to allow a video statement to the court, and remote viewing of the sentencing by Mr. Green's non-biological mother, Dr. Lynne Holland.*" (Emphases added.)

The State argues that this issue is not properly before this court because Green failed to raise a contemporaneous objection to holding his mother's statement by videoconference. The State makes a persuasive argument.

In his written motion for a continuance, Green stated that his mother would have difficulty traveling to Kansas and then back to Maryland because of restrictions related to the COVID pandemic. He asked as an alternative to a continuance that she be allowed to address the court remotely through electronic conferencing. The court denied the continuance but granted her alternative request. Neither Green—on his own or through counsel—nor the judge made any comment about the quality of the internet connection or their ability to understand her message. Now, on appeal, Green argues the quality of the transmission was so poor that he was denied the right to have a witness speak meaningfully on his behalf at sentencing.

In general, issues not raised before the district court may not be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Part of the purpose of the contemporaneous objection rule is to give the district court the opportunity to make a ruling at the same time that testimony is being introduced. See, e.g., *State v. Ballou*, 310 Kan. 591, 612-13, 448 P.3d 479 (2019). In failing to place anything on the record relating to the quality of the transmission, Green made it impossible for the district court to make a judgment about how understandable the mother's statement was or to provide the relief Green now seeks on appeal. In the absence of any activity in the district court on this subject, this court is now left to guess whether the transmission problems impaired the ability of the district court to take into account his mother's testimony.

The request for a continuance was not made because of anticipated electronic transmission issues. It was made so that Green's mother could offer information

8

mitigating against consecutive sentences. When, after the fact, Green argues the transmission was inadequate and the court should have granted the continuance a couple of weeks earlier, he makes an argument never presented to the district court. A party may not object to the introduction of testimony on one ground at trial and assert another ground on appeal. *State v. Garcia-Garcia*, 309 Kan. 801, 810, 441 P.3d 52 (2019). This is what Green seeks to do here.

The preservation problem goes beyond Green's failure to object at the time of sentencing. In general, a litigant may not invite an error and then complain of the error on appeal. *State v. Stewart*, 306 Kan. 237, 248, 393 P.3d 1031 (2017). Green asked for videoconferencing, which he received. To be sure, the internet connection was not perfect, but Green invited the error and neglected to raise any concerns about his rights at the time.

Because Green did not object to the video transmission of his mother's testimony at the time she presented it, his issue on appeal was not preserved for appeal. In fact, Green received what he requested in his motion, and this court is not in a better position than the trial court would have been to decide whether the transmission was adequate to convey the import of his mother's message. We therefore find no reversible error in the denial of the motion to continue.

The sentence imposed by the district court is affirmed.

9