NOT DESIGNATED FOR PUBLICATION

No. 121,778

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES ARTHUR QUALLS III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed October 7, 2022. Affirmed in part, vacated in part, and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

PER CURIAM: After pleading no contest to one count of intentional second-degree murder, the district court sentenced James Arthur Qualls III to a 176-month prison term and ordered him to pay Board of Indigents' Defense Services (BIDS) attorney fees and restitution. Qualls now challenges: (1) the imposition of BIDS attorney fees without considering statutory factors; (2) the constitutionality of Kansas' restitution scheme; and (3) the use of his criminal history at sentencing. After reviewing the issues presented, we find we must vacate the assessment of BIDS attorney fees but affirm the restitution order and the sentence imposed.

1

In 2008, Qualls shot Joseph Beier after an argument over a pool game at a bar in Topeka. A jury convicted Qualls of premeditated first-degree murder, which the Kansas Supreme Court reversed based on a jury instruction error. *State v. Qualls*, 297 Kan. 61, 298 P.3d 311 (2013) (finding voluntary manslaughter instruction warranted reversal). On retrial, a jury again convicted Qualls of premeditated first-degree murder, which the Kansas Supreme Court again reversed based on a jury instruction error. *State v. Qualls*, 309 Kan. 553, 439 P.3d 301 (2019) (self-defense jury instruction).

After the second remand, Qualls agreed to enter a no-contest plea to a reduced charge of intentional second-degree murder. Based on a criminal history score of H, the district court imposed a presumptive 176-month prison sentence. The court also ordered Qualls to pay $6,147.50 in restitution and $1,300 as a reduced amount of BIDS attorney fees.

Qualls timely appealed.

## ANALYSIS

I. THE DISTRICT COURT ABUSED ITS DISCRETION IN ORDERING QUALLS TO PAY BIDS ATTORNEY FEES WITHOUT CONSIDERING HIS FINANCIAL RESOURCES AND THE BURDEN THE FEES WOULD IMPOSE ON HIM

Qualls argues first that the district court erred because it did not consider his financial resources and the nature of the burden that paying attorney fees would impose on him under K.S.A. 22-4513(b). The State concedes that a remand would be appropriate for this reason, since the record shows the district court failed to explicitly consider these statutory factors when ordering Qualls to pay BIDS attorney fees.

As the parties note, K.S.A. 22-4513 governs the imposition of BIDS attorney fees. Subsection (b) provides "[i]n determining the amount and method of payment of [BIDS fees], the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b). The court recently reaffirmed prior holdings that this statute "[i]mposes a mandatory duty on the trial court" to consider the defendant's financial resources and the burden the payment would impose "on the record at the time of assessment." *State v. Garcia-Garcia*, 309 Kan. 801, 823-24, 441 P.3d 52 (2019); *State v. Drayton*, 285 Kan. 689, 716-18, 175 P.3d 861 (2008) (reversing order to pay BIDS attorney fees of $7,110 when court essentially found the defendant would be unable to pay because he would be imprisoned for 25 years).

The parties agree—and the record confirms—that the district court failed to explicitly consider Qualls' financial resources or the nature of the burden that payment would impose before assessing BIDS attorney fees. The court's decision to impose a reduced amount of BIDS attorney fees could be seen as an implicit recognition of Qualls' lack of financial resources, but the statute requires something more. As a result, we must vacate the BIDS attorney fees assessment and remand it to the district court for reconsideration under K.S.A. 22-4513(b).

II.     THE KANSAS RESTITUTION SCHEME DOES NOT VIOLATE EITHER THE UNITED STATES OR KANSAS CONSTITUTIONS

Qualls next challenges the constitutionality of Kansas' criminal restitution statutes. He contends that Kansas' restitution scheme violates his right to a jury trial under section 5 of the Kansas Constitution Bill of Rights and the equivalent right found in the Sixth Amendment to the United States Constitution.

Although he admits to raising both issues for the first time on appeal, Qualls contends this court should consider his claims because they present purely legal questions arising from undisputed facts and implicate his fundamental right to a jury trial.

We choose to address the merits of Qualls' argument because this issue has recently been decided by our Kansas Supreme Court and necessarily fails on its merits. To add more context, while this appeal was pending, the Kansas Supreme Court considered claims identical to the ones Qualls now raises in *State v. Arnett*, 314 Kan. 183, 496 P.3d 928 (2021), *cert. denied* 142 S. Ct. 2868 (2022).

Qualls first argues that the Kansas restitution statutes violate the Sixth Amendment to the United States Constitution by allowing a court to increase the penalty—restitution—to be imposed without submitting it to a jury contrary to *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny. In *Arnett*, the majority noted that numerous federal circuit courts, state courts, and our own Court of Appeals have examined this issue and refused to extend *Apprendi* and its progeny to orders of restitution. "We are content to side with the majority of the circuit courts of appeal." *Arnett*, 314 Kan. at 188. Accordingly, Qualls claim that the Kansas restitution scheme violates the Sixth Amendment fails.

As for the state constitutional claims, the *Arnett* majority held that Kansas' current criminal restitution scheme violated section 5 of the Kansas Constitution Bill of Rights insomuch as the statutes made a criminal restitution order equivalent to a civil judgment. 314 Kan. at 194. But instead of invalidating every restitution order made outside the purview of a jury under the statute, our Supreme Court's chosen remedy was to sever the offending provisions of the criminal restitution scheme. 314 Kan. at 195. By taking this approach, the *Arnett* majority observed:

4

"[R]estitution may still be imposed by a judge either as part of the sentence—as contemplated by K.S.A. 2020 Supp. 21-6604(b)—or as a condition of probation—as contemplated by K.S.A. 2020 Supp. 21-6607(c)(2).

"However, a criminal defendant will not be faced with a civil judgment for restitution unless it has been obtained separately through a civil cause of action. In this way, criminal restitution is—once again—not a legal obligation equivalent to a civil judgment and does not violate section 5." 314 Kan. at 196.

This court is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017); see also *State v. Holley*, 315 Kan. 512, 525, 509 P.3d 542 (2022) (declining to vacate restitution order based on holdings from *Arnett*).

Qualls points to nothing to show that the Kansas Supreme Court is departing from its recent position. As a result, Qualls' constitutional challenges to his restitution order fail.

III.     ALLOWING JUDICIAL FACT-FINDING OF PRIOR CONVICTIONS AT SENTENCING DOES NOT VIOLATE EITHER THE UNITED STATES OR KANSAS CONSTITUTIONS

Lastly, Qualls asserts for the first time on appeal that the trial court violated his federal and state constitutional rights to a jury trial by relying on judicial fact-finding of prior convictions at sentencing.

Our Supreme Court has consistently rejected this claim with regard to the United States Constitution based on the Supreme Court's decision in *Apprendi*, 530 U.S. at 490. "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime

5

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

In addition, while Qualls' appeal was pending the Kansas Supreme Court soundingly rejected a similar claim based on the state Constitution and held:

> "Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted." *State v. Albano*, 313 Kan. 638, Syl. ¶ 4, 487 P.3d 750 (2021).

This court is duty-bound to follow Kansas Supreme Court precedent, absent some indication of a departure from a previous position. *Rodriguez*, 305 Kan. at 1144. Like the previous issue, Qualls again fails to point to any authority indicating the Kansas Supreme Court is departing from its previous positions. As a result, Qualls' constitutional challenges to the use of judicial fact-finding of his prior convictions at sentencing must also fail.

We vacate and remand the BIDS attorney fees assessment, and affirm the restitution order and sentence.

Affirmed in part, vacated in part, and remanded with directions.